## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: HILL'S PET NUTRITION, INC., DOG FOOD PRODUCTS LIABILITY LITIGATION | MDL No. 2887 |
| | Case No. 19-md-2887-JAR-TJJ |
| **(This Document Relates to all MDL cases and *Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc. and Colgate-Palmolive Company*, D. Kan. Case No. 19-cv-2672-JAR-TJJ)** | |

**and**

| | |
|---|---|
| DIANA ANJA EICHHORN-BURKHARD, | |
| Plaintiff, | Case No. 19-CV-2672-JAR-TJJ |
| v. | |
| HILL'S PET NUTRITION, INC. and COLGATE-PALMOLIVE COMPANY, | |
| Defendants. | |

## MEMORANDUM AND ORDER DENYING MOTION FOR SEPARATE LITIGATION TRACK AND CONSOLIDATING AND COORDINATING EICHHORN-BURKHARD WITH MDL NO. 19-2887

Presently before the Court are several matters bearing on the contours and direction of this multidistrict litigation ("MDL"), and on which counsel shall have the responsibility and authority to direct the course of the litigation going forward. Specifically, the Court must decide the Motion to Establish a Separate Litigation Track (Doc. 53) filed on December 17, 2019 by Plaintiffs' counsel in two cases that are part of this MDL, *Schwegmann v. Hill's Pet Nutrition,*

*Inc. and Hill's Pet Nutrition Sales, Inc.*[1] and *Jubinville v. Hill's Pet Nutrition, Inc. and Hill's Pet Nutrition Sales, Inc.*[2] The Court must also rule on whether and to what extent a related case pending in this district, *Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc. and Colgate-Palmolive Co.*,[3] shall be coordinated and/or consolidated with the MDL. These matters have been fully briefed and the Court is prepared the rule. For the reasons set forth below, the Motion to Establish a Separate Litigation Track is denied and *Eichhorn-Burkhard* shall be deemed included in the MDL for coordinated and consolidated pretrial proceedings, with no separate litigation track or counsel.

## I.     Procedural Background

On January 31, 2019, the United States Food and Drug Administration ("FDA") and Defendant Hill's Pet Nutrition, Inc. ("Hill's") announced a voluntary recall of certain Hill's canned dog food products due to elevated levels of Vitamin D.[4] According to the recall notice, ingestion of excessive Vitamin D can lead to serious health issues in dogs, depending on the level and length of exposure.[5] Hill's expanded the list of recalled products on March 20, 2019.[6] In the wake of the recall, numerous consumer class-action lawsuits were filed throughout the

---

[1]D. Kan. Case No. 19-cv-2149-JAR-TJJ.

[2]D. Kan. Case No. 19-cv-2303-JAR-TJJ.

[3]D. Kan. Case No. 19-cv-2672-JAR-TJJ.

[4]U.S. Food & Drug Admin., *Hill's Pet Nutrition Voluntarily Recalls Select Canned Dog Food for Excessive Vitamin D* (Jan. 31, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/hills-pet-nutrition-voluntarily-recalls-select-canned-dog-food-excessive-vitamin-d.

[5]*See id.*

[6]U.S. Food & Drug Admin., *Hill's Pet Nutrition Expands Voluntary Recall of Select Canned Dog Food for Elevated Vitamin D* (Mar. 20, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/hills-pet-nutrition-expands-voluntary-recall-select-canned-dog-food-elevated-vitamin-d. On May 20, 2019, Hill's issued a clarification regarding a can date/lot code inadvertently omitted from the recall list. *See* U.S. Food & Drug Admin., *Hill's Pet Nutrition Additionally Expands Voluntary Recall of Select Canned Dog Food for Elevated Vitamin D* (May 21, 2019), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/hills-pet-nutrition-additionally-expands-voluntary-recall-select-canned-dog-food-elevated-vitamin-d.

United States alleging harm from the purchase and use of Hill's dog food products. Plaintiffs in two of those actions moved under 28 U.S.C. § 1407 to centralize the litigation in one district for coordinated and consolidated pretrial proceedings.

In response, the Judicial Panel on Multidistrict Litigation ("JPML") established MDL No. 19-2887, *In re: Hill's Pet Nutrition, Inc., Dog Food Products Liability Litigation*, and transferred it to this Court on June 4, 2019.[7] The JPML's Transfer Order notes that the cases being transferred "share factual issues arising from allegations that multiple varieties of Hill's Prescription Diet and Science Diet canned dog food products were defective, in that they contained dangerously high levels of Vitamin D."[8] However, the *Schwegmann* and *Jubinville* actions, which are both part of the MDL,[9] involve allegations relating not only to excessive levels of Vitamin D in recalled food, but also regarding excessive and/or *deficient* Vitamin D levels in *non-recalled* products.[10] These Plaintiffs allege that deficient levels of Vitamin D, like excessive levels, can lead to serious health issues in dogs.

Upon the creation of the MDL, this Court issued a Preliminary Practice and Procedure Order Upon Transfer Under 28 U.S.C. § 1407(a), in which it stated its intent to establish an organizational structure for the litigation and stayed all further discovery proceedings pending

---

[7]Transfer Order, Doc. 1 (docketed June 7, 2019).

[8]*Id.* at 1.

[9]*Jubinville* was originally filed in the United States District Court for the District of Rhode Island, and was among the cases transferred to this Court by the JPML. *See* Doc. 1, Schedule A. *Schwegmann* was originally filed in this District. After the JPML created this MDL in June 2019, Schwegmann's Counsel filed a Notice of Related Case and Non-Opposition to Transfer. The parties then stipulated to the inclusion of the case in the MDL for coordinated and consolidated pretrial proceedings, and the Court issued an order deeming the case so included on June 18, 2019. D. Kan. Case No. 19-cv-2149-JAR-TJJ, Docs. 19, 21, 22.

[10]*See Jubinville*, D. Kan. Case No. 19-cv-2303-JAR-TJJ, Doc. 1 ¶ 47 ("[D]ogs that consumed Hill's products which are not yet part of the recall are exhibiting symptoms of vitamin D toxicity. Thus, it appears that Hill's has recalled only a subset of its affected Specialty Dog Foods."); *Schwegmann*, D. Kan. Case No. 19-cv-2149-JAR-TJJ, Doc. 17 ¶¶ 15–19, 25–26, 46–53, 65–76 (allegations concerning potential for excessive *or* deficient levels of Vitamin D and failure of Hill's to recall all affected products).

further notice.[11]  The Court invited all counsel seeking a leadership role to submit proposals describing their qualifications and any case-specific issues that might inform the appropriate leadership structure.[12]  The Court received leadership applications from numerous groups of Plaintiffs' attorneys, including a proposal from Plaintiffs' counsel in the *Schwegmann* and *Jubinville* cases advocating for a "lean leadership structure" that could "provide sufficient resources and experience without over lawyering."[13]

Indeed, while pointing out that their cases involved non-recalled products, counsel nonetheless argued that in this MDL, "there is little risk of Plaintiffs' interests varying to such a degree that any group of plaintiffs will need a separate voice in leadership."[14]  *Schwegmann* and *Jubinville* counsel pointed to their desire for mandatory mediation as proof of the "proactive and collegial nature of the Firms and their commitment to obtaining the best possible relief for pet owners,"[15] and represented to the Court that "[a] leadership team that works cooperatively to resolve this action will save the putative class money and facilitate a faster, fairer resolution."[16] As to the "putative class," both the *Schwegmann* and *Jubinville* complaints define the proposed classes without any distinction between recalled and non-recalled dog food or excessive and deficient levels of Vitamin D.[17]  Both complaints allege that Plaintiffs would be adequate

---

[11]Doc. 2 ¶ 10.

[12]*Id*. ¶ 5.

[13]Motion for Appointment to Leadership Structure (by counsel for Plaintiffs in the *Hall*, *Schwegmann*, *Brown*, *Jubinville*, *Infante*, and *Bone* actions) at 6–7.  Leadership applications were not filed, but sent by email to the Court.

[14]*Id*. at 7.

[15]*Id*. at 13.

[16]*Id*. at 27.

[17]*See Jubinville*, D. Kan. Case No. 19-cv-2303-JAR-TJJ, Doc. 1 ¶ 94 (defining putative national class and state subclasses to include "all persons . . . who purchased Hill's Prescription Diet or Science Diet dog food with elevated levels of vitamin D"); *Schwegmann*, D. Kan. Case No. 19-cv-2149-JAR-TJJ, Doc. 17 ¶¶ 15, 81 (stating that "Defendants' Contaminated Dog Foods have a risk of possessing low and deficient levels of Vitamin D" and

representatives of the putative classes because their interests do not conflict with the interests of the members of the classes they seek to represent.[18]

At a hearing on July 29, 2019, the Court heard extensive arguments from counsel regarding their qualifications and fitness to represent all Plaintiffs in this MDL. During that hearing, the spokesperson for the counsel group including the *Schwegmann* and *Jubinville* attorneys made no argument regarding the necessity for a separate litigation track or separate counsel for Vitamin D-deficient or non-recalled product, but instead represented that any early settlement would likely include claims relating to deficient Vitamin D.[19]

Ultimately, the Court did not appoint any attorney representing the *Schwegmann* or *Jubinville* Plaintiffs to a leadership position. Rather, the Court selected as Plaintiffs' Co-Lead Counsel a group of attorneys referred to as the "Mason-Schwartz-Reese Group" ("MSR Group"), with the addition of one other attorney, Scott Kamber, who submitted a separate leadership application.[20] The spokesperson for the MSR Group stated at the July 29 hearing that the "group was guided by the Duke guidelines which recommend that lawyers appointed to leadership positions must not only be capable and experienced but must 'responsibly and fairly represent *all plaintiffs*, keeping in mind the benefits of diversity of experience, skills, and backgrounds.'"[21]

---

defining putative class as "[a]ll persons who reside in the State of California who purchased the Contaminated Dog Foods through the present in the State of California for household or business use, and not for resale").

[18] *See Jubinville,* D. Kan. Case No. 19-cv-2303-JAR-TJJ, Doc. 1 ¶ 100; *Schwegmann,* D. Kan. Case No. 19-cv-2149-JAR-TJJ, Doc. 17 ¶ 88.

[19] July 29, 2019 Hrg. Tr., Doc. 21 at 35:14–22.

[20] Order Appointing Counsel, Doc. 20 at 3–6. Plaintiffs' Co-Lead Counsel group includes Gary E. Mason from Whitfield Bryson & Mason LLP, Rachel E. Schwartz from Stueve Siegel Hanson LLP, Michael R. Reese from Reese LLP, and Scott A. Kamber from KamberLaw, LLP. Ms. Schwartz also serves as Plaintiffs' Liaison Counsel. Plaintiffs' Executive Committee includes Melissa R. Emert from Stull, Stull & Brody, Jeffrey S. Goldenberg from Goldenberg Schneider, LPA, Rosemary M. Rivas from Levi & Korsinsky, LLP, and Charles E. Schaffer from Levin Sedran & Berman LLP.

[21] July 29, 2019 Hrg. Tr., Doc. 21 at 71:10–15 (emphasis added).

When asked whether the MSR Group would represent claims involving non-recalled products, the group spokesperson stated that if selected, they

> would work hand-in-hand with those plaintiffs' lawyers because their claims have been transferred to this MDL and their claims need to be considered for potential inclusion into the consolidated complaint, whether there's the possibility . . . of separate consolidated complaints that could address issues like that. I think they absolutely have to be part of the process. We'd welcome them being part of our leadership structure. But even if they're not, we would absolutely commit to working hand-in-hand with them to make sure that all of those plaintiffs are represented here in the MDL.[22]

At the time, prior to his appointment to work collaboratively with the MSR Group, Mr. Kamber expressed the opposite view that cases involving non-recalled product should not remain a part of the MDL.[23]

The Court noted in its July 31, 2019 Order Appointing Counsel that it believed that the group of attorneys selected would "best assist the Court in resolving these cases effectively, efficiently, and fairly."[24] The Court ordered Plaintiffs' Co-Lead Counsel to assume responsibility for "[c]oordinating the work of preparing and presenting all of Plaintiffs' claims," including "[d]elegating work responsibilities and monitoring the work of all Plaintiffs' counsel," "[i]nitiating, coordinating, and conducting all discovery on Plaintiffs' behalf and ensuring its efficiency," "[d]etermining (after consultation with members of the Plaintiffs' Executive Committee and other co-counsel as may be appropriate) and presenting . . . to the Court and opposing parties the position of the Plaintiffs on all matters arising during pretrial . . .

---

[22]*Id.* at 80:14–81:1.

[23]*See id.* at 118:14–120:11.

[24]Doc. 20 at 2.

proceedings," and "conducting discussions and negotiations with counsel for Defendants on all matters, including settlement."[25]  The Court cautioned the parties that:

> Upon the issuance of this Order, both Plaintiffs and Defendants are expected to act only through leadership counsel except as may otherwise be ordered.  Any non-lead counsel may file motions for relief from or to modify this or any other order of the Court, but are cautioned that they should do so only if there is a matter of the utmost importance that they have already unsuccessfully sought to have raised by their Lead Counsel.[26]

Newly-appointed lead counsel for both sides appeared before the Court for an initial scheduling conference on August 19, 2019.  The parties reported that they had chosen a mediator, scheduled mediation for October 29, 2019, and agreed upon a protective order, which the Court entered the same day.[27]  The Court set deadlines for the submission of additional proposed governing orders relating to electronically stored information and the preservation of evidence.[28]  In the weeks that followed, the parties extensively negotiated, and the Court revised and entered, orders governing both issues.[29]  The stay of discovery remained in place.

Lead counsel in the MDL conducted an in-person mediation on October 29, 2019, as scheduled.  The *Eichhorn-Burkhard* case—alleging a class of purchasers in Germany and the European Union—was filed the following day in this District, and Plaintiff's counsel listed MDL No. 19-2887 as a related case on the civil cover sheet.[30]  At least one attorney of record for Ms. Eichhorn-Burkhard was part of the counsel group including the *Schwegmann* and *Jubinville* attorneys that sought but was not awarded a leadership role in the MDL.  The case asserts only

---

[25]*Id.* at 3–5.

[26]*Id.* at 2.

[27]Doc. 32.

[28]Doc. 34.

[29]*See* Docs. 43, 44.

[30]D. Kan. Case No. 19-cv-2672-JAR-TJJ, Doc. 2.

one claim, arising under the Magnuson-Moss Warranty Act, which it shares in common with most of the cases that are part of the MDL. The Court promptly directed the parties in *Eichhorn-Burkhard* to either follow the procedure set forth in D. Kan. Rule 23-A for filing a notice of related case or to file a stipulation signed by all parties agreeing to the inclusion of the case in the MDL for coordinated and consolidated pretrial proceedings.[31]

On November 8, 2019, lead MDL counsel for Plaintiffs and Defendants submitted a joint status report updating the Court on their mediation efforts and stating that they were continuing to engage in good-faith negotiations, with an additional in-person mediation scheduled for December 17, 2019. At the parties' request and to facilitate further settlement discussions, the Court continued the stay of discovery pending the parties' next status report due on January 8, 2020.

On November 12, 2019, the parties to *Eichhorn-Burkhard* submitted a stipulation regarding the case's inclusion in the MDL that included certain conditions and limitations. Defendants' unsurprising position as stated in the stipulation was that while the case satisfies the definition of a "tag-along" under JPML Rule 1.1(h) because it involves common issues of fact with the coordinated and consolidated actions, Defendants were not waiving their arguments that a class action of European consumers is not viable by stipulating to the case's inclusion in the MDL.[32] Plaintiff's position was that *Eichhorn-Burkhard* should be coordinated but not consolidated with other MDL cases for pretrial proceedings because it involves "an entirely

---

[31]*Id.*, Doc. 4.

[32]*Id.*, Doc. 11 at 1. JPML Rule 1.1(h) provides: "'Tag-along action' refers to a civil action pending in a district court which involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or (2) actions previously transferred to an existing MDL, and which the Panel would consider transferring under Section 1407."

different putative class."[33]  Plaintiff's counsel represented to the Court that lead MDL Plaintiffs' counsel did not intend to be involved in the case and agreed that Ms. Eichhorn-Burkhard's counsel should handle the matter.  Further, Plaintiff's counsel stated that it was "Plaintiff's understanding that Defendants do not currently intend to include this case in the ongoing mediation in the MDL and intend to file a motion challenging the pleading."[34]  The parties proposed that:

> [I]f transferred, this case should proceed on a parallel track to the other actions in the MDL, with its own Plaintiff's counsel. Plaintiff would be bound by the current pretrial Orders, except that the Order appointing Plaintiffs' Lead Counsel . . . would not apply to the instant action, and Plaintiff in this case would designate a different ESI liaison.[35]

Upon reviewing the stipulation, the Court ordered counsel for the parties in *Eichhorn-Burkhard*, as well as Plaintiffs' Co-Lead Counsel in the MDL, to appear at a telephonic status conference on December 11, 2019, to address whether the case should be deemed included in the MDL and the parties' positions on the appropriate nature and extent of coordination and/or consolidation.[36]  At that conference, the Court learned that Plaintiffs' Co-Lead Counsel did not have the opportunity to review the stipulation before it was filed, and that if they had, they would have expressed their strong disagreement with its characterization of their position regarding *Eichhorn-Burkhard*.  Plaintiffs' Co-Lead Counsel argued that the case should be treated the same as any other case in the MDL and Defendants agreed, having modified their position since the filing of the stipulation.  At the conclusion of the status conference, the Court ordered the parties

---

[33]D. Kan. Case No. 19-cv-2672-JAR-TJJ, Doc. 11 at 1–2.

[34]*Id.* at 2.

[35]*Id.*

[36]D. Kan. Case No. 19-cv-2672-JAR-TJJ, Doc.14.

to submit simultaneous briefing on January 22, 2020, regarding whether and, if so, to what extent and in what manner the *Eichhorn-Burkhard* case should be deemed coordinated and/or consolidated with the MDL.[37]

On December 10, 2019, the FDA published a warning letter to Hill's wherein it summarized findings from its investigation and inspections of Hill's manufacturing facility conducted in response to the voluntary recall. The warning letter states, in part, that Hill's "did not sufficiently assess the probability that a vitamin D toxicity or *deficiency* hazard will occur in the absence of a preventative control as required by 21 C.F.R. § 507.33(c)(1)."[38]

In the meantime, lead MDL counsel were preparing for their next mediation session on December 17, 2019. During that mediation, counsel in the *Schwegmann* and *Jubinville* cases— again counsel who had sought and been denied roles within MDL Plaintiffs' leadership—filed a motion to establish a separate litigation track.[39] These counsel argue that Co-Lead Counsel are failing to advocate for purchasers of non-recalled products, and that separate representation should be appointed to represent those consumers' interests. Lead MDL counsel for Plaintiffs and Defendants then jointly moved for a briefing schedule that would align the briefing due in *Eichhorn-Burkhard* with the response date for the motion to establish a separate litigation track, arguing that both matters involved overlapping factual issues, including the meaning and application of the Court's Order Appointing Counsel.[40] While counsel who filed the motion to establish a separate litigation track would agree to extend the response date to January 15, 2020,

---

[37] D. Kan. Case No. 19-cv-2672-JAR-TJJ, Doc.16.

[38] U.S. Food & Drug Admin., *Warning Letter, Hill's Pet Nutrition Inc*. (Dec. 10, 2019), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hills-pet-nutrition-inc-576564-11202019 (emphasis added).

[39] Doc. 53.

[40] Doc. 54.

they would not agree to align the briefing with *Eichhorn-Burkhard*, which would make the response due only one week later. The Court granted MDL lead counsel's requested briefing schedule on December 23, 2019.[41]

On January 8, 2020, Defendants and Plaintiffs' Co-Lead Counsel reported that they were continuing with settlement discussions in good faith and requested a continued stay of discovery, which the Court granted.[42] On January 21, 2020, lead MDL counsel requested an additional, brief stay of discovery and a two-week extension of the briefing deadlines for the motion to establish a separate litigation track and *Eichhorn-Burkhard*.[43] While Eichhorn-Burkhard's counsel did not oppose this request, counsel who filed the motion for a separate litigation track again would not agree, pointing to their continued uncertainty about whether claims relating to non-recalled products would be included in any consolidated complaint.[44] The Court granted a continuation of the discovery stay and the requested briefing extension, making the briefs due February 5, 2020, and any replies due February 19.[45] Finally, the Court granted an additional extension of the discovery stay on February 5, 2020, and lead MDL counsel are to file their next joint status report within ten business days of this Order resolving the motion for a separate litigation track and the status of *Eichhorn-Burkhard*.[46]

## II. Discussion

As the Court hopes is evident from the foregoing procedural history, this MDL had been proceeding remarkably smoothly until recently, with both sides committed to good-faith

---

[41]Doc. 55.

[42]Docs. 56, 57.

[43]Doc. 58.

[44]Doc. 59.

[45]Doc. 60.

[46]Docs. 61, 63.

settlement negotiations from the beginning.  From all outward appearances, Co-Lead Counsel for

Plaintiffs and Lead Counsel for Defendants have been working together cordially and effectively

in the hope of resolving this litigation in a just and efficient manner.  The motion to establish a

separate litigation track and the opposition of Eichhorn-Burkhard's counsel to the full inclusion

of that case in the MDL have thrown a wrench into the proceedings to the point of impeding the

progress of settlement negotiations.  The Court will briefly address its reasoning for denying the

motion for a separate litigation track and ordering that *Eichhorn-Burkhard* be coordinated and

consolidated with the MDL for pretrial proceedings, with no separate appointment of lead

counsel for either matter at this time.

### A.    Motion to Establish a Separate Litigation Track

*Schwegmann* and *Jubinville* counsel argue that:

> [I]t is critical that the class of consumers who purchased non-
> recalled products are represented and [that they] be allowed to
> pursue their action against Hill's based on the FDA's
> acknowledgement of Hill's systematic failure to properly control
> the levels of vitamin D in *all* of its products and failure to correct
> this risk.[47]

Relying in large part on the comments of Mr. Kamber at the initial scheduling conference, they

argue that Plaintiffs' Co-Lead Counsel have expressly disclaimed any representation of

consumers who purchased non-recalled products.  They point to Co-Lead Counsel's refusal to

provide them with a draft of the proposed consolidated complaint, which they contend is limited

to claims on behalf of purchasers of recalled products, and the lack of communication regarding

whether their clients might be included in any settlement and whether any release might unfairly

prejudice them.  *Schwegmann* and *Jubinville* counsel argue that while mediation is progressing

---

[47]Doc. 53 at 4.

rapidly, putative class members who purchased non-recalled products "are drifting unrepresented."[48]  They propose that this Court establish a separate litigation track for purchasers of non-recalled dog food with its own pretrial schedule, and that this second track should be "directed by the highly skilled and experienced counsel of their choosing who are specifically focused on advancing the claims that Lead Counsel explicitly disavow."[49]

Both Defendants and Plaintiffs' Co-Lead Counsel oppose the motion to establish a separate litigation track.  Defendants counter that creating a separate track at this premature stage of the litigation—with separate counsel and a different pretrial schedule—would undermine the efficiencies of consolidation, waste the Court's and the parties' resources, and unnecessarily slow down these proceedings, including mediation efforts.

Plaintiffs' Co-Lead Counsel state that they remain committed to fully investigating and prosecuting the claims of *all* Plaintiffs in the MDL, and that they have been working cooperatively with other counsel outside the appointed leadership group to achieve that goal. They represent to the Court that their commitment extends to any viable claims by Plaintiffs who purchased non-recalled products, and that they are drafting causes of action on behalf of such Plaintiffs to be included in either the current draft consolidated complaint or in a separate consolidated complaint.  Plaintiffs' Co-Lead Counsel state that if mediation is unsuccessful, they will file the consolidated complaint(s), and then work with Defendants to propose a schedule for resolving threshold legal issues and to sequence discovery on remaining claims to promote the efficient prosecution of the litigation.

---

[48]*Id.* at 1, 6.

[49]*Id.* at 8.

Plaintiffs' Co-Lead Counsel also explain why the substance of settlement discussions—

and the draft consolidated complaint shared with Defendants' Lead Counsel to facilitate those

discussions—should remain confidential, even from other attorneys whose clients are plaintiffs

in the MDL. Both sides participating in the settlement negotiations have signed a confidentiality

agreement, which is consistent with best practices in MDL proceedings.[50] As set forth in the

Duke *Guidelines and Best Practices for Large and Mass-Tort MDLs*:

> Individual MDL plaintiffs, or their privately-retained counsel,
> frequently ask lead counsel for periodic status reports, especially
> disclosure of settlement negotiations. Defendants, however,
> typically demand confidentiality for such discussions, and will
> discontinue negotiations in the event of a breach. Until a
> settlement is actually reached, the value of such information to
> individual plaintiffs is of limited utility, whereas the risks and
> consequences of compromise are considerable and potentially
> severe. All settlements ultimately negotiated by lead counsel
> require consent of the settling plaintiffs to be binding, and such
> consent will require full and transparent notice and other
> disclosure—but only after the negotiators have reached a deal.[51]

Plaintiffs' Co-Lead Counsel state that they have expressly informed Defendants that the draft

consolidated complaint is intended to include claims relating to non-recalled products. They also

state that much has happened to inform mediation discussions since the outset of this litigation,

including the FDA's December 10, 2019 warning letter.

Plaintiffs' Co-Lead Counsel point out that at no time leading up to Court's decision on

lead counsel selection did *Schwegmann* and *Jubinville* counsel argue that the types of clients they

represent—which both then and now included purchasers of recalled and non-recalled

---

[50]*See* Bolch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and Mass-Tort MDLs 53 (2d ed. 2018) ("Lead counsel should not disclose information provided under a condition of confidentiality, including settlement discussions subject to confidentiality conditions, to plaintiffs or their retained counsel. . . . "[I]t would be impractical and unwise to require lead counsel to reveal sensitive strategic concerns, confidential settlement negotiations, and other information provided under a condition of confidentiality to all plaintiffs in the litigation (or their counsel).").

[51]*Id.* at 54.

products—require independent lead counsel. Rather, as set forth above, they represented to the Court precisely the opposite and advocated for early meditation, which is now taking place. Plaintiffs' Co-Lead Counsel assert that the movant's arguments consist of mischaracterizations and unfounded speculation as to the substance of ongoing, confidential mediation discussions, and that their motion is essentially an improper attempt to revisit the Court's Order Appointing Counsel.

To be sure, it is within this Court's discretion to establish separate discovery and/or motion tracks as necessary to manage groups of cases with different factual and legal issues.[52] However, the Court is unconvinced that this MDL currently requires a separate litigation track and/or separate counsel acting on behalf of purchasers of non-recalled product. This case is different in nature from the *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation* MDL, cited by *Schwegmann* and *Jubinville* counsel, where the court created separate litigation tracks for: (1) individual consumers and third-party payors seeking class certification and alleging antitrust, RICO, and consumer-protection claims based on their purchase of EpiPens for use by themselves, their families, or their members, employees, insureds, participants, or beneficiaries; and (2) a business competitor alleging antitrust claims on behalf of itself, but not on behalf of any individual consumer.[53] Further, in the *EpiPen* MDL, defendants had already filed a motion to dismiss in the business competitor case before transfer and consolidation. Here, all Plaintiffs are purchasers of Defendants' dog food products bringing the same types of consumer-protection claims, and no dispositive motions have yet been filed.

---

[52]*See, e.g., In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, MDL No. 2785, No. 17-md-2785-DDC-TJJ, 2019 WL 294803, at *2 (D. Kan. Jan. 23, 2019) (noting that the transferee judge has the discretion to manage cases presenting unique factual and legal issues "through the use of appropriate pretrial devices, such as separate tracks for discovery and motion practice") (quoting *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, 268 F. Supp. 3d 1356, 1359 (J.P.M.L. 2017)).

[53]*In re EpiPen*, 2019 WL 294803, at *2.

Beyond speculating about Co-Lead Counsel's intent to exclude purchasers of non-recalled products from settlement or to negotiate a broad release that prejudices claims based on non-recalled products, the movants do not offer any factual or legal reason necessitating a separate litigation track or separate counsel at this time.

Plaintiffs' Co-Lead Counsel have adequately ensured the Court that they remain best positioned to investigate and prosecute all viable claims on behalf of all Plaintiffs, and the movants' speculative claim that their clients are not represented at mediation is insufficient to persuade the Court otherwise. It would be premature to guess at whether any eventual settlement might include claims relating to non-recalled products and on what terms. If such claims are included, then Plaintiffs asserting those claims will have the opportunity to accept or reject the settlement; if such claims are not included, then they will remain a part of this MDL pending further developments. And of course, any class settlement would be subject to this Court's scrutiny for fairness.

It may be that the Court will need to revisit this issue based on future developments, consider the additional appointment of counsel to advocate for the fair allocation of any settlement fund, or utilize other pretrial management tools, potentially including remand, to address the concerns raised by the movants. At this stage of the litigation, it is not to the parties' or the Court's advantage to create a separate litigation track with separate counsel at the helm. Rather, establishing multiple litigation tracks with competing groups of lead Plaintiffs' counsel at this time would be more likely to create inconsistency, inefficiency, and unnecessary costs by confusing the channels of communication and opening the door to duplicative and/or conflicting litigation efforts, thereby frustrating the purpose of MDL treatment.

## B. Consolidation and Coordination of *Eichhorn-Burkhard* with the MDL

Pursuant to D. Kan. Rule 23-A, the Court must decide whether *Eichhorn-Burkhard* should be deemed included in the MDL for coordinated and consolidated pretrial proceedings in accordance with the rules governing centralization found in 28 U.S.C. § 1407(a). Section 1407(a) provides for the transfer of civil actions when the JPML determines that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."[54] In response to the Court's order requiring briefing on whether and to what extent *Eichhorn-Burkhard* should be coordinated and/or consolidated with the MDL, Plaintiff's counsel offers "two proposals."[55] First, counsel suggests that the Court defer the issue of coordination/consolidation to allow for early briefing on whether a foreign plaintiff has standing to assert a claim under the Magnuson-Moss Warranty Act. Second, counsel suggests that "if the Court prefers to address the consolidation/coordination issue now, Plaintiff Eichhorn-Burkhard would agree to consolidation, *provided* that the *Eichhorn-Burkhard* action proceed on a separate litigation track, with separate counsel for the domestic and foreign purchasers."[56]

As with respect to the motion to establish a separate litigation track for non-recalled products, both Defendants and Plaintiffs' Co-Lead Counsel oppose the creation of a separate track and the appointment of separate counsel for claims brought by foreign purchasers. Both point out that the factual allegations in *Eichhorn-Burkhard* are essentially identical to those asserted in the MDL, *i.e.*, damages resulting from the purchase of recalled products. In fact, the sole claim in *Eichhorn-Burkhard* arises under the Magnuson-Moss Warranty Act, which is also

---

[54] 28 U.S.C. § 1407(a).

[55] Doc. 67 at 3.

[56] *Id.*

asserted in the majority of the MDL cases.  Defendants and Plaintiffs' Co-Lead Counsel argue that there is no reason why this case should be treated differently or separately from others, and that doing so would undercut the efficiencies to be gained from MDL consolidation and undermine ongoing mediation efforts.

While Plaintiff Eichhorn-Burkhard's counsel does not refute that her case involves the same core facts and the same type of claim as other cases already consolidated in the MDL, counsel contends that separate treatment and counsel are necessary because *Eichhorn-Burkhard* involves "an entirely different putative class, namely, persons who purchased the subject products in the European Union and Germany,"[57] and that certain unique considerations therefore apply.  Namely, Plaintiff's counsel argue that the potential available relief is different for European purchasers because Hill's has not offered them refunds for the recalled products, and because any recovery by a domestic purchaser class might negatively impact any potential recovery by a foreign purchaser class.  Plaintiff's counsel has failed to persuade the Court that Plaintiff's German nationality creates a conflict requiring early dispositive motion briefing, a separate litigation track, and/or separate counsel at this time.

First, the Court fails to see how early briefing on certain threshold issues that may be unique to *Eichhorn-Burkhard*, such as whether the Magnuson-Moss Warranty Act applies extraterritorially, need happen now while early mediation is ongoing.  Dispositive rulings on foreign plaintiffs' claims during settlement negotiations would seem to disadvantage rather than advantage these plaintiffs.  Indeed, Plaintiff Eichhorn-Burkhard's counsel's arguments suggest that they are focused more on what would be fair to them as attorneys, rather than on what would most benefit Plaintiff.  They argue:

---

[57]*Id.* at 2.

> Simply consolidating these cases without establishing a separate litigation track or making accommodations for the *Eichhorn-Burkhard* action would have the *de facto* result that MDL Lead Counsel would now control an action that they never filed, never sought to include in their action, and that would expand the putative claims exponentially and globally through no effort of theirs and simply because these two separate cases were consolidated. Such a result would be inappropriate and result in significant inequalities and an unfair result.[58]

This statement misunderstands the purpose of MDL consolidation, which is to create efficiencies in pretrial proceedings. The Court has ordered Plaintiffs' Co-Lead counsel to manage claims filed by many other attorneys, all of whom have an interest in representing their own clients; the Court remains confident in Co-Lead Counsel's ability to do so. Further, delaying a ruling on whether this case should be consolidated with the MDL pending the outcome of motion practice would only serve to further complicate ongoing mediation discussions. If mediation is not successful or does not dispose of the entirety of this MDL, Defendants will almost certainly seek the dismissal of certain claims or groups of claims on jurisdictional and other grounds, yet no other party has suggested that a separate track or separate plaintiffs' counsel are currently required on that basis.

Second, Plaintiff Eichhorn-Burkhard's counsel fail to demonstrate that the addition of a new geographic location is a barrier to consolidation or that foreign purchasers' claims are so separate, distinct, and conflicting as to require separate lead MDL counsel. Plaintiffs' Co-Lead Counsel have indicated their intent to include such claims—which are based on the same facts as the claims of all other MDL Plaintiffs—in the consolidated complaint when it is ultimately filed.[59] The Court is unpersuaded that the lack of a refund program in Europe makes any

---

[58]*Id.* at 10.

[59]Doc. 69 at 4.

difference in how this case should be treated; while the availability of refunds in the United States could theoretically impact recovery by some U.S. purchasers, Plaintiff Eichhorn-Burkhard's counsel simply do not explain why the lack of a refund option in certain European markets supports their position.

Finally, Plaintiff Eichhorn-Burkhard's counsel's speculation that there may be a limited fund available to compensate all plaintiffs is an insufficient basis for creating a separate litigation track for foreign purchasers. As Plaintiffs' Co-Lead Counsel point out, Eichhorn-Burkhard's counsel do not support that there is a limited fund available here or that Defendants are in financial difficulty. Plaintiffs' Co-Lead Counsel add that "it would be premature to assume that there might be a settlement someday in which a German plaintiff alleging Magnuson-Moss claims would be treated differently than a Kansan or California resident alleging [an] identical Magnuson-Moss claim."[60] The Court agrees that it would be premature to start creating different paths for different plaintiffs at this time—while the Court is not privy to the parties' settlement negotiations, it is concerned about the uncertainty that requests for separate litigation tracks have created.

Plaintiffs' Co-Lead Counsel advise the Court that questions about their authority to represent all Plaintiffs have negatively impacted ongoing mediation efforts. At this early but critical stage of the litigation, the Court is skeptical of attempts to splinter Plaintiffs' leadership, and *Eichhorn-Burkhard* will be deemed fully coordinated and consolidated in the MDL for pretrial proceedings. As set forth above, if distinctions develop down the road that require the appointment of sub-class counsel or the use of other pretrial management tools for settlement, motion practice, or otherwise, the Court can address those issues at the appropriate time. For

---

[60]Doc. 65 at 9.

now, Plaintiffs' Co-Lead Counsel remain well-positioned to direct the course of this litigation on behalf of all Plaintiffs and may delegate work responsibilities among all Plaintiffs' counsel as the various cases included in the MDL require.

## III. Conclusion

In closing, the Court must unfortunately note that it is troubled by some of the tactics that have come to light through the briefing on the foregoing matters. In its Practice and Procedure Order, the Court stated that "cooperation among counsel is essential to resolving this litigation in an orderly and expeditious fashion."[61] However, counsel have been engaged in disputes over the sharing of testing data. In several instances, certain counsel have refused to agree to short briefing extensions, resulting in additional work for lead counsel and the Court. Other counsel have—whether willfully or mistakenly—misrepresented another party's position in a filed pleading. More concerningly, Plaintiffs' Co-Lead Counsel point out that the motion to establish a separate litigation track was filed in the middle of the December 17, 2019 in-person mediation session, and that "[a]s it was likely intended to do, the filing disrupted the mediation and created unnecessary distractions from the Parties' critical discussions."[62] All of the foregoing issues indicate a lack of cooperative spirit that the Court expects to see and threaten to undermine the just and efficient conduct of these actions.

While it is a client's prerogative to choose his or her own attorney, it is the transferee court's role to choose lead counsel for an MDL, and no plaintiff whose claims are made part of an MDL has a right to *lead* MDL counsel of his or her own choosing. Nor do attorneys have a right to lead a subset of MDL cases on the basis that they personally filed those cases or have

---

[61]Doc. 2 ¶ 23.

[62]Doc. 65 at 14.

invested more time and resources in them than appointed lead counsel. The Court reminds all

counsel that while they of course must zealously represent their clients' interests, they are also to

act with courtesy and professionalism at all times.

**IT IS THEREFORE ORDERED BY THE COURT** that the Motion to Establish a

Separate Litigation Track (Doc. 53) is **denied** and *Eichhorn-Burkhard*, D. Kan. Case No. 19-cv-

2672-JAR-TJJ, shall be deemed included in the MDL for coordinated and consolidated pretrial

proceedings.

      **IT IS SO ORDERED.**

Dated: March 2, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE