IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: HILL'S PET NUTRITION, INC., DOG FOOD PRODUCTS LIABILITY LITIGATION | MDL No. 2887 |
| This Document Relates to: | Case No. 19-md-2887-JAR-TJJ |
| *Diana Anja Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc. and Colgate-Palmolive Company*, D. Kan. Case No. 19-cv-2672-JAR-TJJ | |

**MEMORANDUM AND ORDER**

In January 2019, Defendant Hill's Pet Nutrition, Inc. ("Hill's") announced a voluntary recall of canned dog food products that contained elevated levels of vitamin D. In the wake of the recall, putative class-action lawsuits were filed across the country alleging harm from the purchase and use of Hill's dog food products. The Judicial Panel on Multidistrict Litigation transferred and assigned these actions to this Court for coordinated and consolidated pretrial proceedings. Plaintiff Diana Anja Eichhorn-Burkhard—a resident of Germany who bought recalled Hill's pet food and fed it to her dog—brings this tag-along action against Hill's and Colgate-Palmolive Company ("Colgate"), its corporate parent, on her own behalf and as a class action on behalf of other European purchasers of recalled Hill's pet food products.[1] Plaintiff's Complaint raises a single claim for breach of warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312. Now before the Court is Defendants' Motion to Dismiss the *Eichhorn-Burkhard* Complaint (Case No. 19-cv-2672, Doc. 30; and Case No. 19-md-2887, Doc. 139)

---

[1] On July 30, 2021, the Court entered an Order of Final Approval and Judgment approving a settlement resolving claims in this multidistrict litigation, but the settlement specifically excludes "[c]laims in the lawsuit captioned *Diana Anja Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc. et al.*, No. 19-CV-02672- JAR-TJJ." Doc. 133 ¶ 31.

under Fed. R. Civ. P. 12(b)(6).  The motion is fully briefed, and the Court is prepared to rule.  For the following reasons, the Court grants Defendants' motion.

**I.     Background**

The following facts come from the Complaint, and the Court takes them as true for purposes of deciding this motion.  Defendants manufacture pet food products, including dog food.  Hill's is headquartered in Topeka, Kansas, and manufactures its products in the United States.  Colgate, a Delaware corporation that maintains its principle executive office in New York, is the parent company of Hill's.  Colgate exercises control over Hill's and derives profits from the sales of its pet food products.  Defendants sell Hill's pet food products in 86 countries, including Germany and other European Union member states.

In marketing and advertising materials, Defendants represent that Hill's pet food products meet "the special nutritional needs of puppies and adult dogs," protect "vital kidney and heart function," "[s]upport[] your dog's natural ability to build lean muscle daily," and "improve & lengthen quality of life."[2]  Defendants also state that they "only accept ingredients from suppliers whose facilities meet stringent quality standards," and "each ingredient [is] examined to ensure its safety."[3]

Despite these representations, Hill's recalled some of its canned dog food products in January 2019 because they contained elevated levels of vitamin D.  Hill's updated the list of recalled products in February 2019 and again in March 2019.  Plaintiff, a citizen and resident of Dusseldorf, Germany, had purchased recalled Hill's dog food from her veterinarian and fed it to

---

[2] *Eichhorn-Burkhard v. Hill's Pet Nutrition, Inc.*, D. Kan. Case No. 19-cv-2672-JAR-TJJ, Doc. 1 ¶ 73.
[3] *Id.*

her dog. She claims the dog food contained toxic levels of vitamin D and caused her dog to become seriously ill.

Plaintiff styles her lawsuit as a class action. She purports to bring the suit individually and on behalf of "[a]ll persons residing in European Union member states who purchased Recalled Products and suffered damages as a result" (the "European Union Class").[4] She also proposes a subclass composed of "[a]ll persons residing in Germany who purchased Recalled Products and suffered damages as a result" (the "German Sub-Class").[5] The Complaint asserts a single claim for breach of warranty under the Magnuson-Moss Warranty Act. Defendants now move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6).

## II.     Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"[6] A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[8] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[9] When considering a motion to dismiss, the Court must

---

[4] *Id.* ¶ 50.

[5] *Id.*

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[7] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[8] *Id.*

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

accept the facts alleged in the complaint as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences from the facts in the plaintiff's favor.[10]

### III.  Discussion

The Magnuson-Moss Warranty Act ("MMWA") protects consumers damaged by a warrantor's failure to comply with the terms of a warranty.[11]  Defendants argue that the Court must dismiss Plaintiff's MMWA claim—the only claim she asserts against them—because the MMWA does not apply extraterritorially, and the Complaint does not allege a proper domestic application of the statute.  Defendants also argue that Plaintiff's MMWA claim fails for four additional, independent reasons: (1) Plaintiff must, but fails to, allege an underlying state-law warranty claim; (2) Plaintiff does not meet the MMWA's jurisdictional requirement of naming 100 plaintiffs; (3) Plaintiff must, but did not, seek a refund or give Defendants a reasonable opportunity to cure the alleged defect before bringing suit; and (4) the Complaint cites statements that did not create written warranties within the meaning of the MMWA.

Because it is dispositive here, the Court reaches only the first argument for dismissal—that Plaintiff's MMWA claim is impermissibly extraterritorial.  To this argument, Plaintiff responds that the MMWA applies extraterritorially when, as here, the consumer products at issue were exported from the United States and sold abroad.  Neither the Supreme Court nor any federal court of appeals has yet addressed the extraterritorial reach of the MMWA.[12]  This Court must therefore interpret the MMWA to determine whether it applies extraterritorially.

---

[10] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir.), *cert. denied*, 142 S. Ct. 477 (2021).

[11] 15 U.S.C. § 2310(d)(1).

[12] The Sixth Circuit is the only court of appeals that has touched on the extraterritorial application of the MMWA, and it did so merely in passing.  *See In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, 953 F.3d 890, 896 (6th Cir. 2020).  In that case, foreign plaintiffs moved to amend their complaints to add a MMWA claim.  *See id.*  In denying their motion, the Sixth Circuit noted that the plaintiffs "cite[d] no cases applying the act extraterritorially," and the court itself cited a district court case finding that the MMWA does not apply

The Court interprets the MMWA in light of the presumption against extraterritoriality: "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application."[13]  This presumption reflects the "commonsense notion that Congress generally legislates with domestic concerns in mind"[14] and "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord."[15]

The Supreme Court "has established a two-step framework for deciding questions of extraterritoriality."[16]  "The first step asks 'whether the presumption against extraterritoriality has been rebutted.'"[17]  The presumption is rebutted only when "the text [of the statute] provides a 'clear indication of an extraterritorial application,'"[18] meaning "Congress has 'affirmatively and unmistakably' indicated that the statue should apply extraterritorially."[19]  If the statute does not apply extraterritorially, "the second step of [the] framework asks 'whether the case involves a domestic application of the statute.'"[20]  This step requires the court to identify "the statute's 'focus,'"[21] and ask "whether the conduct relevant to that focus occurred in United States

---

extraterritorially.  *Id.* (citing *MY. P.I.I., LLC v. Tognum Am., Inc.*, 2016 WL 7626201, at *3–6 (S.D. Fla. Mar. 31, 2016)).  But the Sixth Circuit did not resolve the question.  *Id.*

[13] *See RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)); *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013).

[14] *RJR Nabisco*, 579 U.S. at 336 (quoting *Smith v. United States*, 507 U.S. 197, 204 n.5 (1993)).

[15] *Kiobel*, 569 U.S. at 115 (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)).

[16] *WesternGeco LLC v. ION Geophysical Corp.*, –U.S.–, 138 S. Ct. 2129, 2136 (2018).

[17] *Id.* (quoting *RJR Nabisco*, 579 U.S. at 337).

[18] *Id.* (quoting *Morrison*, 561 U.S. at 255).

[19] *SEC v. Scoville*, 913 F.3d 1204, 1215 (10th Cir. 2019) (quoting *RJR Nabisco*, 579 U.S. at 335).

[20] *WesternGeco LLC*, 138 S. Ct. at 2136 (quoting *RJR Nabisco*, 579 U.S. at 337).

[21] *Id.* (quoting *RJR Nabisco*, 579 U.S. at 337).

territory."[22]  "If it did, then the case involves a permissible domestic application of the statute."[23] "[B]ut if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory."[24]

The Court addresses these two inquiries in turn below.

### A. Affirmative Intention to Apply Extraterritorially

The Court begins by asking whether the MMWA "gives a clear, affirmative indication that it applies extraterritorially."[25]  The answer is no.

The MMWA creates a private right of action for "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Act], or under a written warranty, implied warranty, or service contract."[26]  The MMWA limits its protections to "consumer products"[27] that are "distributed in commerce."[28]  Under the MMWA, "[t]he term 'distributed in commerce' means sold in commerce, introduced or delivered for introduction into commerce, or held for sale or distribution after introduction into commerce."[29]  "Commerce," in turn, is defined as "trade, traffic, commerce, or transportation—

---

[22] *Id.*

[23] *Id.* (citing *RJR Nabisco*, 579 at 337).

[24] *RJR Nabisco*, 579 U.S. at 337.

[25] *Id.*

[26] 15 U.S.C. § 2310(d)(1).

[27] *See id.* § 2301(3) (defining "consumer" as including "a buyer (other than for purposes of resale) of any consumer product").

[28] *Id.* § 2301(1).

[29] *Id.* § 2301(13).

(A) between a place in a State and any place outside thereof, or (B) which affects trade, traffic, commerce, or transportation described in subparagraph (A)."[30]

Plaintiff argues that the MMWA's broad definition of "commerce" shows the congressional intent to extend the statute extraterritorially to reach consumer goods that are manufactured in the United States but exported to and sold in a foreign country. For this argument, Plaintiff relies on an unreported, out-of-circuit district court decision, *Barnext Offshore Ltd. v. Ferretti Group USA, Inc.*[31] There, the court concluded the plain language of the MMWA applies extraterritorially to exported consumer products for two reasons. First, the court reasoned that "[s]ince the MMWA defines a 'State' as states and U.S. possessions and territories, '*any* place outside thereof' is any place outside of a 'State,' such as a foreign country."[32] Second, the court observed that "Congress used its broadest terms in its commerce definition— 'affecting' commerce."[33] This phrase, the court noted, "indicates Congress's intent to regulate to the outer limits of its authority under the Commerce Clause,"[34] which the court determined must "include commerce with foreign nations."[35] The court also found that the legislative history supported its "expansive reading of the Act."[36]

---

[30] *Id.* § 2301(14).

[31] No. 10-23869-CIV, 2011 WL 13223746 (S.D. Fla. May 16, 2022).

[32] *Id.* at *6 (footnote omitted).

[33] *Id.* (quoting 15 U.S.C. § 2301(14)).

[34] *Id.* (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 116 (2001)).

[35] *Id.*

[36] *Id.* at *7; *see also Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012 WL 1570057, at *14 (S.D. Fla. May 2, 2012) (declining to reconsider its prior ruling that the MMWA applies extraterritorially).

The Court declines to follow *Barnext* and instead concludes that this type of boilerplate "commerce" language is not enough to overcome the presumption against extraterritoriality.[37] The Supreme Court has "repeatedly held that even statutes that contain broad language in their definitions of 'commerce' that expressly refer to '*foreign* commerce' do not apply abroad."[38] In *Aramco*, the Supreme Court interpreted almost identical language in Title VII of the Civil Rights Act.[39] The Supreme Court found that it was ambiguous and constituted "boilerplate language which can be found in any number of congressional Acts, none of which have ever been held to apply overseas."[40] This is so, the Supreme Court explained, because "[m]any Acts of Congress are based on the authority of that body to regulate commerce among the several States."[41] If the Supreme Court were to permit "possible, or even plausible, interpretations" of boilerplate "commerce" language "to override the presumption against extraterritorial application, there would be little left of the presumption."[42] Thus, this Court cannot interpret the MMWA's generic definition of "commerce" as an affirmative indication that the statute applies extraterritorially. And no other provision of the MMWA contains a clear and affirmative expression of extraterritorial application.[43]

---

[37] *See EEOC v. Arabian Am. Oil Co.* ("*Aramco*"), 499 U.S. 244, 251 (1991); *see also Nieman v. Dryclean U.S.A. Franchise Co.*, 178 F.3d 1126, 1129 (11th Cir. 1999) ("Mere boilerplate language in a statute is insufficient to overcome th[e] presumption [against extraterritoriality]."). As Defendants point out, another judge in the Southern District of Florida has expressly declined to follow *Barnext*, and for good reason: "that decision did not address the presumption against the extraterritorial [e]ffect of a statute," at least not in any meaningful sense. *Stein v. Marquis Yachts, LLC*, No. 14-24756-CIV, 2015 WL 3440163, at *3 (S.D. Fla. May 27, 2015).

[38] *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 263 (2010) (quoting *Aramco*, 499 U.S. at 251).

[39] *See Aramco*, 499 U.S. at 249 (construing the term "industry affecting commerce" found in 42 U.S.C. § 2000e(h), and the term "commerce," defined in § 2000e(g) as "trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof").

[40] *Id.* at 250.

[41] *Id.* at 253.

[42] *Id.*

[43] *See MY. P.I.I., LLC v. Tognum Am., Inc.*, No. 14-60701-CIV, 2016 WL 7626201, at *5 (S.D. Fla. Mar. 31, 2016) (finding that the MMWA does not apply extraterritorially); *Stein v. Marquis Yachts, LLC*, No. 14-24756-

What's more, the Federal Trade Commission ("FTC"), the agency charged with implementing the MMWA,[44] has similarly interpreted the MMWA not to reach exported consumer products sold abroad.[45]  According to the FTC, "by its terms the Act *arguably* applies to products exported to foreign jurisdictions," but the congressional intent "to apply the requirements of the Act to such products is not sufficiently clear to justify such an extraordinary result."[46]  The FTC thus "does not contemplate the enforcement of the Act with respect to consumer products exported to foreign jurisdictions."[47]

Although the FTC promulgated its interpretations of the MMWA using notice-and-comment procedures, its interpretations are self-avowedly "advisory in nature"; they are "not substantive rules" and lack "the force or effect of statutory provisions."[48]  The FTC's interpretations thus may not be entitled to *Chevron* deference.[49]  But its interpretations are still "entitled to respect" under *Skidmore v. Swift & Co.*[50] to the extent they have "the power to persuade."[51]

In determining an agency interpretation's "power to persuade," courts typically examine "the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency

---

CIV, 2015 WL 3440163, at *3 (S.D. Fla. May 27, 2015) (same); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 915 (C.D. Cal. 2011) (same).

[44] *See* 15 U.S.C. § 2312(c).

[45] *See* 16 C.F.R. § 700.1(i).

[46] *Id.* (emphasis added).  The FTC also determined that "the public interest would not be served by the use of Commission resources to enforce the Act with respect to such products."  *Id.*

[47] *Id.*

[48] 42 Fed. Reg. 36112, 36112 (July 13, 1977).

[49] *Miller v. Herman*, 600 F.3d 726, 734 (7th Cir. 2010) (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

[50] 323 U.S. 134 (1944).

[51] *Christensen*, 529 U.S. at 587 (quoting *Skidmore*, 323 U.S. at 140).

with earlier and later pronouncements."[52]  As the Seventh Circuit has recognized, "[t]hose factors tilt strongly in favor of deference here" because: (1) "[t]he FTC was responsible for implementing the Act"; (2) "[t]he FTC promulgated the interpretations using notice-and-comment procedures even though it was not required to do so"; (3) "[i]t has adhered to its interpretative positions consistently since the 1970s, even after soliciting comments on them repeatedly in the late 1990s"; and (4) "it grounded its reasoning in Magnuson-Moss's legislative history."[53]  These considerations warrant "giv[ing] the interpretations a reasonably high degree of deference."[54]  And critically, on the particular point at issue in this case, the FTC's interpretation is consistent with the presumption against extraterritoriality and the requirement that the congressional intent to overcome it be clearly expressed.[55]  Accordingly, the Court accepts the FTC's interpretation here as persuasive.

In sum, there is no "clear" and "affirmative" indication in the MWWA that it applies extraterritorially, and so the Court concludes that it does not.  The Court therefore turns to the second step of the framework for analyzing extraterritoriality issues.

### B.   Domestic Application of the MMWA

At step two, Defendants argue that Plaintiff's Complaint does not allege a proper domestic application of the MMWA.  They contend that the focus of the MMWA is on "the sale

---

[52] *Skidmore*, 323 U.S. at 140.

[53] *Miller*, 600 F.3d at 734 (citations omitted).

[54] *Id.*

[55] *See Stein v. Marquis Yachts, LLC*, No. 14-24756-CIV, 2015 WL 3440163, at *3 (S.D. Fla. May 27, 2015) (finding the FTC's MMWA interpretation "supported by the statutory rule of construction that there is a presumption that Congress did not intend for a statute to apply extraterritorially unless a contrary intent clearly appears"); *cf. Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 272 (2010) (giving no deference to an agency interpretation that "relied on cases [the Supreme Court] disapprove[d], which ignored or discarded the presumption against extraterritoriality").

of products to consumers,"[56] relying on a district court case finding that the plain language of the statute "compels this conclusion."[57]  And here, Defendants point out, the alleged sales of Hill's pet food products all took place in Europe, not the United States.

Plaintiff makes no response to this argument.  She does not assert that her claim involves a domestic application of the MMWA.  Instead, she urges this Court to deny Defendants' motion to dismiss because, she contends, the MMWA applies extraterritorially.  But for the reasons explained above, the Court has concluded that it does not.  Because Plaintiff's MMWA claim is impermissibly extraterritorial, the Court grants Defendants' motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Hill's Pet Nutrition, Inc. and Colgate-Palmolive Company's Motion to Dismiss the *Eichhorn-Burkhard* Complaint (Case No. 19-cv-2672, Doc. 30; and Case No. 19-md-2887, Doc. 139) is **granted**. This case is hereby dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: May 24, 2022

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE

---

[56] Doc. 140 at 14.

[57] *MY. P.I.I., LLC v. Tognum Am., Inc.*, No. 14-60701-CIV, 2016 WL 7626201, at *5 (S.D. Fla. Mar. 31, 2016).